UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE FORCE PROTECTION, INC. DERIVATIVE LITIGATION ) ) ) ) ) ) ) ) ) | Master File No. 2:08-1907-CWH<br><br>Consolidated with Case Nos.<br>2:08-1904-CWH; 2:08-1998-CWH<br>2:08-2019-CWH |

**INDIVIDUAL DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
<u>THE CONSOLIDATED AMENDED VERIFIED DERIVATIVE COMPLAINT</u>**

Eleni M. Roumel
Federal Bar No. 9959
NELSON MULLINS RILEY &
SCARBOROUGH LLP
151 Meeting Street
Charleston, SC  29401
843.534.4112 (Telephone)
843.534.4223 (Facsimile)
eleni.roumel@nelsonmullins.com

M. Robert Thornton
Michael R. Smith
Benjamin Lee
KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, Georgia  30309
404.572.4600 (Telephone)
404.572.5100 (Facsimile)
bthornton@kslaw.com
mrsmith@kslaw.com
blee@kslaw.com

*Attorneys for Defendants Frank Kavanaugh, Gordon R. McGilton, Michael Moody, Jack Davis, Roger G. Thompson, Jr., John S. Day, Raymond W. Pollard, R. Scott Ervin, John W. Paxton, Sr., Gale Aguilar, and Michael S. Durski
and Nominal Defendant Force Protection, Inc.*

Defendants Frank Kavanaugh, Gordon R. McGilton, Michael Moody, Jack Davis, Roger G. Thompson, Jr., John S. Day, Raymond W. Pollard, R. Scott Ervin, John W. Paxton, Sr., Gale Aguilar, and Michael S. Durski (the "Individual Defendants") submit this memorandum of law in support of their motions to dismiss the Consolidated Amended Verified Derivative Complaint ("Complaint" or "CC") for failure to state a claim. As explained in the Memorandum of Law in Support of Nominal Defendant Force Protection, Inc.'s Motion to Dismiss ("Force Protection's Brief"), Plaintiff's demand futility allegations do not meet the stringent pleading requirement of Fed. R. Civ. P. 23.1, and Plaintiff therefore lacks standing to pursue claims on the Company's behalf.[1] Even if the Plaintiff were found to have standing, the Complaint is also subject to dismissal because Plaintiff's allegations fail to state a claim upon which relief can be granted against the Individual Defendants.[2]

First, Nevada courts have never recognized a derivative claim for breach of fiduciary duty premised on alleged insider trading, and this Court should decline to blaze a new trail in Nevada corporate law to sustain such a claim in this case.[3] That is especially so because the majority of courts to have considered such claims under state law have correctly declined to recognize them (a) because there is no harm to the *company* even if insiders sell based on

---

[1] The Individual Defendants join in, adopt, and incorporate the arguments set forth in Force Protection's Brief as if fully set forth herein.

[2] This Court is not bound by prior decisions in related derivative litigation involving some or all of these Defendants in which state courts in South Carolina and Nevada have denied motions to dismiss the complaints in those cases on similar legal grounds to those asserted here. *See* Exs. G and H to Force Protection's Brief. The orders denying motions to dismiss in the two state court actions are not final and hence, for that and other reasons, cannot provide a basis for claim or issue preclusion. Additionally, the issue before this Court is whether *Plaintiff's* Complaint -- not other complaints filed by different nominal plaintiffs in separate actions -- states a claim.

[3] As noted in Force Protection's Brief, similar claims were also asserted in the derivative action pending before Judge Young in South Carolina state court. Judge Young's order (attached as Exhibit G to Force Protection's brief) does not mention the insider trading claims asserted in that case. Judge Young's order therefore does not address any of the legal issues presented here. The derivative complaint filed in Nevada state court did not assert claims premised on alleged insider trading, and the order issued in that case therefore does not address the legal issues concerning insider trading raised in this motion.

material, non-public information (it is the *buyers*, not the company, who would be damaged) and (b) in view of the comprehensive regulation of insider trading at the federal level.

Second, for the reasons set forth in Force Protection's Brief, Plaintiff's claims for failure of oversight, gross mismanagement, unjust enrichment, and waste all fail to state a claim.

## ARGUMENT

### I. PLAINTIFF'S ALLEGATIONS REGARDING SUPPOSED INSIDER TRADING FAIL TO STATE A CLAIM

Plaintiff has accused Defendants McGilton and Kavanaugh of selling their personally-held Force Protection shares while in possession of material, non-public information. Plaintiff does not expressly allege any particular cause of action based on this alleged insider selling, but those allegations are incorporated by reference in all four claims. In any case, those allegations fail to state a claim. No Nevada court has recognized a claim for breach of fiduciary duty based upon alleged insider trading. Most state courts that have considered the issue have soundly rejected such claims. Furthermore, even if this Court decides that alleged insider trading can be the basis for a derivative claim, Plaintiff's allegations do not state such a claim.

### A. Allegations Of Insider Trading Do Not State A Claim Of Harm To The Company

Maintaining a derivative claim requires Plaintiff to allege that some harm has befallen ***the Company***. By definition, insider trading claims cannot meet that basic requirement. Plaintiff does not and cannot allege that the alleged insider sales damaged Force Protection. Instead, he alleges only that Kavanaugh and McGilton sold their own personally-held shares on the open market to unnamed buyers. CC ¶¶ 122-25. Force Protection was a bystander to those transactions, not a party to them, and therefore could not have been damaged by the sales. *See Freeman v. Decio*, 584 F.2d 186 (7th Cir. 1978) (applying Indiana law and holding that insider

2

trading claims alleged no harm to company and therefore failed as a matter of law); *In re Cray Inc. Derivative Litig.*, 431 F. Supp. 2d 1114, 1133 (W.D. Wash. 2006) (holding that "Washington State courts would decline to adopt a common law derivative claim for insider trading where there is no allegation of damage to the nominal defendant corporation."); *Schein v. Chasen*, 313 So. 2d 739 (Fla. 1975) (same holding under Florida law); *see also* 3A WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, Sec. 1174 (2002) ("[M]ost courts considering the issue have rejected a common law corporate cause of action against directors and officers for insider trading.").

Derivative claims premised on alleged insider trading have also been rejected for a separate, but no less compelling, reason: the existence of a well-established and comprehensive federal remedy for such trades. Section 20A of the Securities Exchange Act of 1934, 15 U.S.C. § 78t-1, provides federal remedies for unlawful insider trading. Section 10(b) of that Act, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, have also developed into an effective remedy for insider trading. (Indeed, the federal securities class action pending before this Court includes claims based upon the same alleged insider trading mentioned in this Complaint.) Thus, in *Frankel v. Slotkin*, 795 F. Supp. 76, 81 (E.D.N.Y. 1992) (applying New Jersey law), the court noted that "the class action suit under Rule 10b-5 has developed into an effective remedy for insider trading" and that the defendants in the state court action were "defending themselves elsewhere concerning the transactions at issue here." Based on that, the court "conclude[d] that the New Jersey courts would not recognize a duplicative claim under common law for recovery of profits from insiders." *Id.; see also Freeman,* 584 F.2d at 195 ("the 10b-5 class action has made substantial advances toward becoming the kind of effective remedy for insider trading [it was] hoped that it might become"). As the *Frankel* and *Freeman* courts concluded, there is

3

simply no need to supplement the comprehensive federal insider trading laws with a duplicative state law cause of action. No Nevada court has so extended Nevada corporate law, and this Court should also decline to do so.

In sum, Plaintiff's allegations of insider trading simply do not state a claim for any breach of duty to the Company by the only two Individual Defendants alleged to have sold any Force Protection stock.

### B. Plaintiff Alleges No Facts Showing That Either Kavanaugh Or McGilton Was In Possession Of Material, Non-Public Information When They Sold Shares.

In order to establish that improper insider selling occurred, "it must be shown that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *11 (Del. Ch. Oct. 7, 2003). Here, Plaintiff has failed to plead any facts whatsoever showing that either Kavanaugh or McGilton sold any shares on the basis of material, non-public information. The Complaint merely presents a chart of alleged stock sales and asks the Court to speculate that all or some of the sales must have been made on the basis of material, non-public information. CC ¶¶ 124-25. There are no allegations establishing what Kavanaugh and McGilton are supposed to have known at the time of each sale, much less detailing how and why that information was material and non-public. Such sheer speculation does not state a claim under Rule 12(b)(6). *See, e.g., Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (holding that to survive a motion to dismiss for failure to state a claim, a complaint "requires more than labels and conclusions").

Moreover, any possible inference that the sales allegedly made by Kavanaugh and McGilton were based on, and executed to unfairly profit from, material nonpublic information is

undermined by public SEC filings showing that the challenged stock sales were made pursuant to pre-arranged trading plans authorized by SEC Rule 10b5-1, 17 C.F.R. § 240.10b5-1.  *See* Exs. A & B.  Rule 10b5-1 provides that an individual who sells securities while aware of material, nonpublic information does not violate Rule 10b-5 if the sales are made in conformity with a binding contract, instruction, or written plan put into place at a time when the trader was not aware of material, nonpublic information.  *See* 17 C.F.R. § 240.10b5-1.

Where, as here, there are no allegations that the selling defendants were aware of material nonpublic information at the time of committing to a 10b5-1 plan, the existence of the plan negates an inference that the selling defendants improperly sold stock as part of a scheme, as opposed to making legitimate, pre-determined sales.  *See In re Guidant Corp. Sec. Litig.,* 536 F. Supp. 2d 913, 931 (S.D. Ind. 2008) ("Some of the stock sales referenced were, according to Defendants, automatic, nondiscretionary sales made pursuant to 10b5-1 plans, and therefore do not give rise to a strong inference of scienter."); *Stiegele ex rel Viisage Tech., Inc. v. Bailey,* C.A. No. 05-10677-MLW, 2007 WL 4197496, at *13 (D. Mass. Aug. 23, 2007) ("In fact, the presence of a trading plan rebuts an inference of scienter and supports the reasonable inference that stock sales were pre-scheduled and not suspicious.").

II. **PLAINTIFF'S CLAIMS FOR FAILURE OF OVERSIGHT, GROSS MISMANAGEMENT, UNJUST ENRICHMENT, AND WASTE ALL FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Force Protection's Brief in support of its motion to dismiss explains in detail why:  (a) Plaintiff's failure of oversight claims fail to state a claim in light of the stringent standards of *In re Caremark Int'l. Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) and its progeny, as detailed on pages 11-27 of Force Protection's Brief; and (b) Plaintiff's vague claims for unjust

5

enrichment and waste all fail to state a claim, as detailed on pages 27-30 of Force Protection's Brief.

Although Force Protection's arguments were made in the context of demand futility under Fed. R. Civ. P. 23.1, those arguments also show that Plaintiff's allegations fail to state a viable claim for relief under the more liberal standards of Rule 12(b)(6). The Individual Defendants hereby incorporate those arguments by reference and submit that the Complaint must be dismissed.

### III.  THE INDIVIDUAL DEFENDANTS CANNOT BE HELD LIABLE FOR ALLEGED WRONGS THAT OCCURRED BEFORE THEY JOINED THE COMPANY OR AFTER THEY LEFT

Plaintiff occasionally refers in the Complaint to a "relevant period," but never defines that period. Certain allegations in the Complaint, however, complain of matters that date back to 2004, including (a) alleged late deliveries identified in the OIG Report, and (b) DCAA Reports that also date back to 2004. CC ¶¶ 66, 69. Many of the Individual Defendants, however, were not affiliated with the Company at that time, and cannot be liable for events that predated their tenures. Plaintiff attempts to lump all of the Individual Defendants together, but Rule 23.1 does not permit that type of shotgun approach.

Defendant Thompson joined the board on December 26, 2006, after the alleged late deliveries identified in the OIG Report had already occurred, and after at least some of the eight DCAA Reports were issued. *Id.* ¶ 30. The same is true of Defendants Moody and Davis, who joined the Board on September 18, 2006 and in March 2006, respectively. *Id.* ¶ 26, 29.

Defendant Day joined the Board on September 18, 2007. *Id.* ¶ 31. He therefore had no involvement in, and cannot be liable for, events that predate the start of his tenure, which include all of the alleged false statements issued in 2006 and the first three quarters of 2007 and alleged

weaknesses in internal controls at that time. *Id*. ¶¶ 75-96 (complaining of false statements and deficient internal controls from December 2006 through August 2007). The same is true for Defendant Paxton, who did not join the Board until February 20, 2008. *Id*. ¶ 32. In fact, Plaintiff does not allege that any false statements occurred after February 20, 2008, making it impossible for Defendant Paxton to face any liability as to those claims.

Defendant Kavanaugh resigned from the Company on June 21, 2007. *Id*. ¶ 24. Yet the Complaint accuses him of wrongdoing through September 2008 -- events for which Kavanaugh could not possibly bear any responsibility. The same largely holds true for Defendant Ervin, who left the Company by January 19, 2007. *Id*. ¶ 34.

Plaintiff alleges that Defendant Durski was the Company's Chief Financial Officer from January 2007 through February 29, 2008, yet accuses him of misconduct before 2007 and after February 2008. Defendant Aguilar left the Company on September 18, 2006, yet Plaintiff tars him with accusations of wrongdoing that occurred years after that time. *Id*. ¶ 33. Defendant Pollard joined the Company December 9, 2005 (Ex. C, p. 2.), but spent less than a year on the board of directors. Ex. D, p. 2.

Plaintiff has by and large taken a shotgun approach to alleging misconduct by "Defendants" or "all Defendants." Plaintiff's approach is not just sloppy, it is a substantive defect that requires dismissal. In order to state a claim, Plaintiff must detail which Individual Defendants are responsible for what conduct. *See In re Sagent Tech., Inc. Derivative Litig.,* 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("Because a number of defendants either left or joined the company during the time period spanned by the complaint, the complaint cannot state a claim for breach of fiduciary duty in the absence of more specific allegations regarding which defendants are alleged to have performed which acts."); *see also In re Tyco Int'l., Ltd.*, MDL

Doc. No. 02-1335-B, 2007 WL 1703023 at *9 (D.N.H. June 11, 2007) (dismissing all claims based on activity occurring before defendant joined the board).

## CONCLUSION

For the foregoing reasons, the Individual Defendants respectfully request that this Court grant their motion to dismiss.

Respectfully submitted this 17th day of June, 2009.

NELSON MULLINS RILEY & SCARBOROUGH LLP

        By: S/ELENI M. ROUMEL
           Eleni M. Roumel
           Fed. Bar No. 9959
           E-Mail: eleni.roumel@nelsonmullins.com
           151 Meeting Street / Sixth Floor
           Post Office Box 1806 (29402-1806)
           Charleston, SC  29401-2239
           (843) 853-5200

           M. Robert Thornton *(admitted pro hac vice)*
           Michael R. Smith *(admitted pro hac vice)*
           Benjamin Lee *(admitted pro hac vice)*
           KING & SPALDING LLP
           1180 Peachtree Street N.E.
           Atlanta, Georgia  30309
           404.572.4600 (Telephone)
           404.572.5100 (Facsimile)
           bthornton@kslaw.com
           mrsmith@kslaw.com
           blee@kslaw.com

           *Attorneys for Frank Kavanaugh, Gordon R. McGilton, Michael Moody, Jack Davis, Roger G. Thompson, Jr., John S. Day, Raymond W. Pollard, R. Scott Ervin, John W. Paxton, Sr., Gale Aguilar, and Michael S. Durski and Nominal Defendant Force Protection, Inc.*

Charleston, South Carolina
June 17, 2009