# EXHIBIT B

Electronically Filed
11/26/2011 12:56:01 PM

*[signature]*

**CLERK OF THE COURT**

1   **ACOMP**
    **COGBURN LAW OFFICES**
2   JAMIE S. COGBURN, ESQ.
    Nevada State Bar No. 008409
3   jsc@cogburnlaw.com
    9555 S. Eastern Ave., Suite 280
4   Las Vegas, Nevada89123
    Telephone (702) 384-3616
5   Facsimile (702) 943-1936

6   **LEVI & KORSINSKY, LLP**
    Joseph Levi, Esq.
7   30 Broad Street, 15th Floor
    New York, New York 10004
8   Telephone (212) 363-7500
    Facsimile (212) 363-7171

9   *Attorneys for Plaintiff*

10

11                  **DISTRICT COURT**

12              **CLARK COUNTY, NEVADA**

13   JEFFREY   WIENER,   individually   and   on
     behalf of all others similarly situated,       Case No. A-11-651336-C
14
                          Plaintiff,                 Dept. No. XI
15
             v.
16                                                   **AMENDED COMPLAINT FOR**
                                                     **BREACH OF FIDUCIARY DUTIES AND**
17   MICHAEL MOODY, et al.,                          **AIDING AND ABETTING**

18                        Defendants.

19

20   HECTOR   L.   TORRES,   Individually   and   on
     Behalf of All Others Similarly Situated,        Case No. A-11-651464-C
21
                          Plaintiff,                 Dept. No. XI
22
             v.
23

24   FORCE PROTECTION, INC., et al.,

25                        Defendants,

26

27

28

*COGBURN LAW OFFICES*
*9555 S. Eastern., Suite 280*
*Las Vegas, Nevada89123*
*(702) 384-3616 FAX: (702) 943-1936*

THOMAS E. YOUNG, II, on behalf of himself and all others similarly situated,

        Plaintiff,

    v.

MICHAEL MOODY, et al.,

        Defendants,

Case No. A-11-651892-C

Dept. No. XXXI

Plaintiffs, by their attorneys, allege upon information and belief, except for their own acts, which are alleged on knowledge, as follows:

1.     Plaintiffs bring this class action on behalf of the public stockholders of Force Protection, Inc. ("Force Protection" or the "Company") against Force Protection's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their attempt to sell the Company to General Dynamics Corporation ("General Dynamics"). Absent injunctive relief, shareholders now face irreparable harm.

2.     On November 7, 2011, Force Protection and General Dynamics announced a definitive agreement under which General Dynamics, through its wholly owned subsidiary, Falcon Acquisition Corp. ("Merger Sub"), has commenced a tender offer to acquire all of the outstanding shares of Force Protection for $5.52 per share in cash (the "Proposed Transaction"). The Proposed Transaction is valued at $360 million. General Dynamics commenced the tender offer on November 18, 2011, and the tender offer is scheduled to expire on December 16, 2011.

3.     The Proposed Transaction is unfair to Force Protection shareholders, does not offer them adequate consideration, and is going to be effected through the dissemination of materially false and misleading information in the current Schedule 14D-9 Recommendation Statement filed by Force Protection on November 18, 2011 (the "Recommendation Statement").

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

4.      The Board breached its fiduciary duties to shareholders by agreeing to the Proposed Transaction for inadequate consideration, and then breached its duty to disclose all material information to shareholders.  As described in more detail below, Force Protection has been performing strongly, has won significant contracts, has high growth prospects, and analyst expectations regarding the value of the Company are significantly higher than the consideration being offered.  Furthermore, the consideration shareholders are to receive does not adequately take into account the synergies General Dynamics will realize from the Proposed Transaction.  As detailed below, the consideration shareholders are to receive is thus inadequate and undervalues the Company.

5.      In addition, the Board failed to inform itself regarding the Proposed Transaction before voting to recommend it to shareholders.  According to the Recommendation Statement, management provided the Board with the Company's financial projections only on November 4, 2011 and November 6, 2011 – right before the Board voted on the Proposed Transaction.  Consequently, the Board had insufficient time to assess the accuracy of those projections.  Furthermore, the projections the Board received at the last moment were extremely different from the projections management gave General Dynamics, and were significantly more pessimistic about the Company's future prospects.  The Board thus failed to inform itself regarding the Company's value before voting on the Proposed Transaction.

6.      The Board also failed to obtain an appropriate fairness opinion from either Lincoln International LLC (including its affiliate, Lincoln Partners Advisors LLC, "Lincoln") or Barclays Capital Inc. ("Barclays Capital"), the Company's financial advisors. Specifically, as described in more detail below, the Company provided financial forecasts to Lincoln and Barclays Capital that did not include substantial revenue opportunities and operating expenditure reduction opportunities forecasted by senior management.  However, the Company provided a

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

set of forecasts to General Dynamics that included those optimistic projections. Lacking complete information regarding the Company's future revenue and cost saving opportunities, Lincoln and Barclays Capital were unable to properly value the Company or evaluate the fairness of the Proposed Transaction from a financial point of view.

7.      The uninformed Board exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making a successful competing offer for the Company.  Specifically, pursuant to the merger agreement dated November 7, 2011 (the "Merger Agreement"), defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirors or even in continuing discussions and negotiations with potential acquirors; (ii) a provision that provides General Dynamics with three business days to match any competing proposal; (iii) a top-up option that allows General Dynamics to pursue a merger without a vote and without any requirement of establishing the entire fairness of the Proposed Transaction; and (iv) a provision that requires the Company to pay General Dynamics a termination fee of $10 million in order to accept a superior offer.  These provisions substantially and improperly limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of Force Protection.

8.      After deciding to recommend that Force Protection shareholders tender their shares, the Board issued a false and misleading Recommendation Statement.  As described in more detail below, the Recommendation Statement fails to disclose material information, concerning, among other things: (a) the financial projections of Force Protection provided to General Dynamics that were significantly more optimistic about the Company's prospects; (b) the full financial projections, including free cash flow projections, for fiscal year 2016, used in the  analyses conducted by Lincoln and Barclays Capital; (c) financial information relating to the

financial projections, and assumptions of the financial advisors in conducting their analyses; (d) information concerning any potential conflicts of interest with General Dynamics, as well as the financial advisors and (e) the process conducted by the Board in selling the Company.

9.      The Individual Defendants have breached their fiduciary duties of loyalty, due care, independence, good faith and fair dealing, and Force Protection, General Dynamics, and Merger Sub have aided and abetted such breaches by Force Protection's officers and directors. Plaintiffs seek to enjoin the Proposed Transaction unless and/or until defendants cure their breaches of fiduciary duty.

## PARTIES

10.     Plaintiff Hector L. Torres is, and has been at all relevant times, the owner of shares of common stock of Force Protection.

11.     Plaintiff Jeffrey Wiener is, and has been at all relevant times, the owner of shares of common stock of Force Protection.

12.     Plaintiff Thomas E. Young, II is, and has been at all relevant times, the owner of shares of common stock of Force Protection.

13.     Force Protection is a corporation organized and existing under the laws of the State of Nevada. It maintains its principal corporate offices at 1520 Old Trolley Road, Summerville, South Carolina 29485. Force Protection is a leading designer, developer and manufacturer of blast- and ballistic-protected vehicles.

14.     Defendant Michael Moody ("Moody") has served as a director of the Company since 2006, President of the Company since September 2007, and Chairman of the Board and Chief Executive Officer since 2008.

15.     Defendant Roger G. Thompson, Jr. ("Thompson") has been a director of the Company since 2008.

16.     Defendant Lynn Brubaker ("Brubaker") has been a director of the Company since March 14, 2011.

17.     Defendant Thomas Corcoran ("Corcoran") has been a director of the Company since March 14, 2011.

18.     Defendant Jack A. Davis ("Davis") has been a director of the Company since 2006.

19.     Defendant John Day ("Day") has been a director of the Company since 2007.

20.     Defendant B. Herbert Ellis ("Ellis") has been a director of the Company since 2009.

21.     Defendant Kenneth Merlau ("Merlau") has been a director of the Company since 2009.

22.     Defendant John W. Paxton ("Paxton") has been a director of the Company since 2008.

23.     Defendants Moody, Thompson, Brubaker, Corcoran, Davis, Day, Ellis, Merlau, and Maxton are collectively referred to hereinafter as the "Individual Defendants" and/or the "Board."

24.     Defendant General Dynamics is a Delaware corporation with its headquarters located in Falls Church, Virginia. General Dynamics provides business aviation, combat vehicles, weapons systems and munitions, military and commercial shipbuilding, and communications and information technology products and services worldwide.

25.     Defendant Falcon Acquisition Corp. is a Nevada corporation wholly owned by General Dynamics that was created for the purposes of effectuating the Proposed Transaction.

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

**INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES**

26.    By reason of Individual Defendants' positions with the Company as officers and/or directors, they are in a fiduciary relationship with Plaintiffs and the other public shareholders of Force Protection and owe them, as well as the Company, a duty of care, loyalty, good faith, candor, and independence.

27.    To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a)    adversely affects the value provided to the corporation's shareholders;

(b)    favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)    adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(d)    will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public shareholders.

28.    In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a)    participating in any transaction where the Individual Defendants' loyalties are divided;

(b)    participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)    unjustly enriching themselves at the expense or to the detriment of the public shareholders.

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

29.    Plaintiffs allege herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, good faith, candor, and independence owed to plaintiff and other public shareholders of Force Protection.

## CLASS ACTION ALLEGATIONS

30.    Plaintiffs brings this action on their own behalf and as a class action on behalf of all owners of Force Protection common stock and their successors in interest, except Defendants and their affiliates (the "Class").

31.    This action is properly maintainable as a class action for the following reasons:

(a)    the Class is so numerous that joinder of all members is impracticable. As of November 8, 2011, Force Protection has approximately 70.06 million shares outstanding.

(b)    questions of law and fact are common to the Class, including, inter alia, the following:

(i)    Have the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Transaction;

(ii)    Have the Individual Defendants breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Proposed Transaction;

(iii)    Have the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties owed by them to Plaintiffs and the other members of the Class;

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

    (iv)    Have the Individual Defendants breached any of their other fiduciary duties to Plaintiffs and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, honesty and fair dealing;

    (v)    Have the defendants, in bad faith and for improper motives, impeded or erected barriers to discourage other strategic alternatives including offers from interested parties for the Company or its assets;

    (vi)    Whether Plaintiffs and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

    (vii)    Have Force Protection, General Dynamics, and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duty; and

    (viii)    Is the Class entitled to injunctive relief or damages as a result of defendants' wrongful conduct.

    (c)    Plaintiffs are committed to prosecuting this action, are adequate representatives of the Class, and have retained competent counsel experienced in litigation of this nature.

    (d)    Plaintiffs' claims are typical of those of the other members of the Class.

    (e)    Plaintiffs have no interests that are adverse to the Class.

    (f)    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

(g)    Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)    Plaintiffs anticipate that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy

## FURTHER SUBSTANTIVE ALLEGATIONS

32.    Force Protection is a leading designer, developer and manufacturer of survivability solutions, including blast- and ballistic-protected wheeled vehicles to support the armed forces of the United States and its allies.  The Company's specialty vehicles, including the Buffalo, Cougar, Ocelot and the related variants of each, are designed specifically for reconnaissance and other operations and to protect their occupants from landmines, hostile fire, and improvised explosive devices.  Complementing these efforts, the Company is designing, developing and marketing the JAMMA, a new vehicle platform that provides increased modularity, transportability, speed and mobility.  The Company also develops, manufactures, tests, delivers and supports products and services aimed at further enhancing the survivability of users against additional threats.

33.    The global demand for armored military trucks and related services is robust.  In November 2010, the U.K. Ministry of Defence ordered 200 Ocelots from Force Protection in a contract valued at approximately $280 million for their Light Protected Patrol Vehicle ("LPPV") program. Production and delivery of the vehicles is underway and is expected to be completed by spring 2012.  Force Protection and the U.K. are currently in discussions for a follow-on order or a second order.

34.    In August 2011, Force Protection submitted a bid to the Australian Defence Materiel Organisation for the production of up to 1300 vehicles valued at more than $1 billion by the Australian Government.  Force Protection is one of just three companies that the Australian Defence Materiel Organisation is considering for the contract.

35.    On November 1, 2011, Force Protection announced that it received an order from the U.S. Army Contracting Command in Warren, Michigan for the purchase of an additional 167 Buffalo vehicles and 102 Buffalo armor kits, in a contract valued at approximately $185.9 million. Deliveries are expected to extend to April 2014. The order "provides Force Protection important revenue visibility into 2014" stated defendant Moody in the press release announcing the order.

36.    Furthermore, with the winding down of U.S. operations in Iraq and Afghanistan, there will be opportunities to rebuild existing armored trucks.  "Force Protection does have some long-term visibility over the next couple of years, its Buffalo vehicle sales are stable through 2014, and there will be service contracts for its Cougar vehicles in the field now that will need refurbishment," said Joseph Maxa, an analyst with Dougherty & Co. LLC.

37.    On November 7, 2011, Force Protection filed a Form 10-Q with the Securities and Exchange Commission, disclosing its financial results for the Third Quarter 2011.  According to the Quarterly Report, Force Protection ended 3Q 2011 with $122 million in cash and no debt. Further, the Company has a funded backlog of product orders in the amount of $652 million.  In addition, Force Protection disclosed that it had achieved gross margin of 22% in 3Q 2011, and that it had enjoyed net income of $4.5 million for the three months ended September 30, 2011, compared to a net income loss of $1.8 million for the three months ended September 30, 2010.

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

### *The Board Enters into the Unfair Proposed Transaction*

38.    Despites its growth prospects and promising outlook, the Board agreed to sell the Company to General Dynamics.  In a press release dated November 7, 2011, the Company announced that it had entered into a merger agreement with General Dynamics pursuant to which General Dynamics, through Merger Sub, has commenced a tender offer to acquire all of the outstanding shares of the Company for $5.52 per share.

39.    Upon consummation of the Proposed Transaction, Force Protection will become a part of General Dynamics Land Systems, a leading manufacturer of wheeled, tracked and amphibious combat vehicles, offering a spectrum of design, production and lifecycle support to customers worldwide.

40.    The Proposed Transaction consideration is inadequate and fails to adequately compensate Force Protection's shareholders for the Company's recent contract awards and growth prospects. In fact, according to Yahoo Finance, the average price target for Force Protection common stock among 4 analysts was $6.50 per share, with at least one analyst setting a price target as high as $8 per share.

41.    The Board agreed to sell the Company at the most inopportune time, at a time when the Company's stock price was trading at a discount to its intrinsic value. As recently as February 14, 2011, Force Protection stock traded at $5.73 per share. Force Protection's stock price had dropped to $4.21 per share the day prior to the announcement of the Proposed Transaction as a result of reporting net losses for two consecutive quarters.

42.    The Board determined to sell the Company after receiving financial projections from management just days before voting on the Proposed Transaction.  Further, management provided the Board with projections that were materially different from the projections provided to General Dynamics.  The Board received these unduly pessimistic projections and made a

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

decision without adequately informing itself, or being informed, of its options and the fairness of the price.  These pessimistic projections—as opposed to the optimistic projections provided to General Dynamics—were also the projections given to the Company's financial advisors, which therefore were incapable of properly opining on the fairness of the Proposed Transaction from a financial point of view.  Moreover, the Company has not disclosed the projections provided to General Dynamics to shareholders, who therefore cannot make a fully informed decision regarding the Proposed Transaction.

43.     On May 9, 2011, Force Protection announced its financial results for the first quarter of 2011. The Company reported net sales of $141 million and a net loss of $49,000 compared to net sales of $134.8 million and net income of $1.1 million for the first quarter of 2010.  On August 4, 2011, Force Protection announced its financial results for the second quarter of 2011. Force Protection reported net sales of $92.2 million and a net loss of $15.2 million for the quarter compared to net sales of $137.1 million and net income of $4.8 million for the second quarter of 2010.

44.     At the time the Proposed Transaction was announced, however, Force Protection's stock price was on the verge of rising. The same day the Proposed Transaction was announced, Force Protection announced its financial results for the third quarter of 2011. The Company returned to profitability reporting net income of $4.5 million for the quarter compared to a net loss of $1.9 million for the same quarter in 2010.

45.     In the press release announcing the financial results, defendant Moody commented on the Company's solid quarter and its strong outlook, stating:

> We were pleased to return to profitability during our third quarter after a challenging first half of 2011, which was impacted by the timing of awards and deliveries.  Contributing to our 2011 third quarter results was the delivery of 56 vehicles and continued modernization and spares and sustainment revenue.  We also achieved a 22 percent gross margin, which was higher than our long-term target of 20 percent.

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

We continue to expect the second half of 2011 will be much stronger than the first six months of the year, including a fourth quarter that should be the most substantial of the year. We also look forward to near-term customer decisions on a number of substantial programs that could benefit our financial results beginning in 2012. This includes a potential second tranche of vehicle orders under the United Kingdom's LPPV program, a contract for service and sustainment of the U.S. Army's fleet of route clearance and MRAP vehicles, Canada's requirement for vehicles and long-term service as part of its TAPV program, and Australia's Land 121 Phase 4 and REDFIN vehicle programs. Success in one or more of these business development pursuits will provide increased visibility to long-term revenue for the Company, as well as move us further away from urgent operational funding.

46.     By announcing the Proposed Transaction in conjunction with the strong financial results, however, the Company effectively capped the price Force Protection's stock price would have risen to as a result of the Company's strong quarter, thereby preventing Force Protection shareholder from realizing further value as a result of the positive quarter.

47.     The Proposed Transaction consideration fails to adequately compensate Force Protection's shareholder for the significant synergies created by the merger. The Proposed Transaction is a strategic merger for General Dynamics. "Force Protection complements and strategically expands General Dynamics' armored vehicle business, adding new products to the expansive portfolio of combat vehicles that we currently manufacture and support," said Mark C. Roualet, president of General Dynamics Land Systems. "In addition, Force Protection's skilled workforce provides high-quality support and sustainment services to an installed fleet of approximately 3,000 vehicles, strengthening our ability to support assets deployed with U.S. forces around the world. With this acquisition, we will create new opportunities to serve domestic and international customers alike." Despite the significant synergies inherent in the transaction for General Dynamics, however, the Board failed to secure a fair price for the Company, either for the intrinsic value of its assets or the value of the Company's assets to General Dynamics.

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

*__The Board Failed to Provide Adequate Information to Lincoln and Barclays Capital, Calling Into Question the Credibility of Their Fairness Opinions__*

48.     In approving the Proposed Transaction and recommending that Force Protection shareholders tender their shares in the tender offer, the Board considered the fairness opinions of both Lincoln and Barclays Capital.  However, the Board failed to authorize, or otherwise provide, adequate financial forecasts and disclosures to Lincoln and Barclays Capital so that they could accurately and properly evaluate the value of the Company and the fairness of the Proposed Transaction to the Company's shareholders.

49.     Lincoln and Barclays Capital both rendered fairness opinions that the $5.52 per share Proposed Transaction consideration was fair, from a financial point of view to Force Protection's shareholders.  In rendering their fairness opinions, Lincoln and Barclays Capital utilized the financial forecasts of the Company prepared by Force Protection management in the various financial analyses performed by them.

50.     However, the financial forecasts did not adequately take into account the Company's revenue opportunities and growth prospects.  As stated in the Recommendation Statement, the financial forecasts provided to General Dynamics differed in some "meaningful respects" to the financial forecasts provided to Lincoln and Barclays Capital.

51.     Specifically, with respect to fiscal year 2012, the financial forecasts provided to Lincoln and Barclays Capital did not take into account "additional revenue opportunities from increased sales resulting from unidentified acquisitions and unauthorized contract awards (and corresponding increases in gross profit and EBITDA)."

52.     For fiscal years 2013 to 2015, the financial forecasts provided to Lincoln and Barclays Capital did not take into account "additional revenue opportunities (and corresponding increases in gross profit and EBITDA) resulting from large, competitive winner-take-all contracts that the Company had bid or planned to bid in the future, but as to which the Company

believed it had a 33% or less chance of winning." As a result, the net revenue in the financial forecasts provided to Lincoln and Barclays Capital was less by $92 million for fiscal year 2013, $162 million for fiscal year 2014 and $262 million for fiscal year 2015 when compared to the net revenue in the financial forecasts provided to General Dynamics.

53.    In addition, the financial forecasts provided to Lincoln and Barclays Capital did not include operating expenditure reduction opportunities of $11 million for fiscal year 2013, $9 million for fiscal year 2014 and $4 million for fiscal year 2015.

54.    Having not been provided with a complete accounting of the Company's future revenue and operating expenditure reduction opportunities, Lincoln and Barclays Capital were unable to properly value the Company and evaluate the fairness of the Proposed Transaction consideration. For example, in its *Discounted Cash Flow Analysis,* Lincoln derived an implied per share value of the Company of $4.81 to $6.10 per share. Had they been provided with all of the information related to the Company's future revenue and operating expenditure reduction opportunities (along with the probabilities associated with achieving them), the implied per share value range calculated by Lincoln in the *Discounted Cash Flow Anslysis* may have been substantially higher.

55.    Accordingly, without adequate fairness opinions, Force Protection shareholders cannot properly evaluate whether or not the consideration they will receive in connection with the Proposed Transaction is fair and adequate and represents the true market value for their holdings.

56.    The Board's inability to provide such critical data to Lincoln and Barclays Capital is a breach of its fiduciary duties to obtain an accurate and independent fairness evaluation of the Proposed Transaction to shareholders.

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

### *The Preclusive Deal Protection Devices*

57.    As part of the Merger Agreement, the Board also agreed to certain onerous and preclusive deal protection devices that operate conjunctively to make the Proposed Transaction a *fait accompli* and ensure that no competing offers will emerge for the Company.

58.    §7.5(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by General Dynamics. This section also demands that the Company terminate any and all prior or on-going discussions with other potential acquirors.

59.    Pursuant to §7.5 of the Merger Agreement, should an unsolicited bidder submit a competing proposal, the Company must notify General Dynamics of the bidder's identity and the terms of the bidder's offer. Thereafter, should the Board determine that the unsolicited offer is superior, before the Company can terminate the Merger Agreement with General Dynamics in order to enter into the competing proposal, it must grant General Dynamics three business days in which the Company must negotiate in good faith with General Dynamics (if General Dynamics so desires) and allow General Dynamics to amend the terms of the Merger Agreement to make a counter-offer so that the competing no longer continues to be a Superior Proposal, as defined in the Merger Agreement. In other words, the Merger Agreement gives General Dynamics access to any rival bidder's information and allows General Dynamics a free right to top any superior offer simply by matching it. Accordingly, no rival bidder is likely to emerge and act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor General Dynamics and piggy-back upon the due diligence of the foreclosed second bidder.

60.    The Merger Agreement also provides that a termination fee of $10 million must be paid to General Dynamics by Force Protection if the Company decides to pursue the

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

competing offer, thereby essentially requiring that the competing bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

61.    General Dynamics is also the beneficiary of a "Top-Up" provision that ensures that General Dynamics gains the shares necessary to effectuate a short-form merger.  Pursuant to the Merger Agreement, if General Dynamics receives 90% of the shares outstanding through its tender offer, it can effect a short-form merger.  In the event General Dynamics fails to acquire the 90% required, the Merger Agreement also contains a "Top-Up" provision that grants General Dynamics an option to purchase additional shares from the Company in order to reach the 90% threshold required to effectuate a short-form merger.

62.    Ultimately, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.

***The Company's Insiders' Conflicts of Interest***

63.    To make matters worse, the Company's executive officers and directors have material conflicts of interest and are acting to better their own personal interests through the Proposed Transaction at the expense of the Company's public shareholders.

64.    Each of the Company's executive officers and directors own restricted shares of the Company which will automatically vest pursuant to the terms of the Merger Agreement, will become free from any further restrictions, and which the holder will now be able to cash out for the Proposed Transaction consideration of $5.52 per share. The following chart shows the

amount and value of restricted shares held by each Force Protection executive officer and director:

| Name | Number of Outstanding Restricted Shares | Total Estimated Consideration |
|---|---|---|
| *Non-Employee Directors* | | |
| John S. Day | 21,779 | $ 120,220 |
| John W. Paxton, Sr. | 21,779 | $ 120,220 |
| Thomas A. Corcoran | 14,583 | $ 80,498 |
| Major General Jack A. Davis, USMC (Ret.) | 21,779 | $ 120,220 |
| B. Herbert Ellis | 16,279 | $ 89,860 |
| Kenneth A. Merlau | 16,279 | $ 89,860 |
| Lieutenant General Roger G. Thompson, Jr., USA (Ret.) | 21,779 | $ 120,220 |
| Lynn Brubaker | 14,583 | $ 80,498 |
| *Named Executive Officers* | | |
| Michael Moody | 385,239 | $ 2,126,519 |
| Charles A. Mathis | 154,645 | $ 853,640 |
| Phillip Randall Hutcherson | 144,766 | $ 799,108 |
| *All Executive Officers and Directors as a group (13 persons)** | 902,490 | $ 4,981,745 |

65.    Similarly, the Company's executive officers, including defendant Moody, own unvested stock options of the Company that, pursuant to the Merger Agreement, will automatically vest. The following chart shows the amount and value of vested and unvested stock options held by the Company's executive officers:

| Name | Vested Options | | Unvested Options | | Total Estimated Consideration |
|---|---|---|---|---|---|
| | Number of Shares | Weighted Average Exercise Price Per Share | Number of Shares | Weighted Average Exercise Price Per Share | |
| *Named Executive Officers* | | | | | |
| Michael Moody | 157,062 | $ 3.96 | 170,884 | $ 4.51 | $ 425,921 |
| Charles A. Mathis | 33,956 | $ 4.43 | 58,691 | $ 4.82 | $ 81,180 |
| Phillip Randall Hutcherson | 17,290 | $ 5.54 | 52,959 | $ 5.06 | $ 27,105 |
| *All Executive Officers as a group (5 persons)** | 208,308 | $ 4.17 | 308,835 | $ 4.68 | $ 557,088 |

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada 89123
(702) 384-3616  FAX: (702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

66.    Defendant Moody previously entered into an employment agreement with Force Protection which provides him with substantial severance payments in the event he is terminated without cause or resigns for good reason in connection with a change of control, which includes the Proposed Transaction. As stated in the Recommendation Statement:

> In the event of such a termination, Mr. Moody is entitled to receive a lump-sum cash payment equal to two times the sum of (x) his highest rate of annual base salary during the 12-month period prior to the termination date and (y) the greatest of target bonus for the fiscal year in which the termination date occurs, target bonus for the fiscal year in which the Applicable Time occurs and the average of the actual bonuses earned in the two years immediately preceding the fiscal year in which the Applicable Time occurs. In addition, Mr. Moody is entitled to receive (i) a one-time relocation benefit of $30,000, (ii) a lump-sum cash payment equal to a pro rata portion of his annual bonus (although such bonus will be paid at target if bonus awards under the Company's 2011 Short-Term Incentive Program (the "2011 STIP") have not been paid prior to the closing date of the Merger, as described in this Item 3 under the heading "Past Contacts, Transactions, Negotiations and Agreements — Compensation Actions between Signing of Merger Agreement and Consummation of the Merger"), (iii) full vesting and exercisability of any unvested Options and the immediate lapse of any restrictions on Restricted Shares or other equity or incentive awards and (iv) the employer portion of any premiums for continued health insurance coverage under COBRA for a period of 18 months.

67.    In addition, in connection with entry into the Merger Agreement, the Company "entered into retention letters with certain individuals, including [Philip] Ciarlo," the Company's Chief of Operations. Pursuant to the retention letter, Ciarlo will be entitled to receive a retention bonus payment of $450,000 within days after completion of the tender offer and consummation of the Proposed Transaction. The Recommendation Statement should also disclose which other "certain individuals" entered into retention agreements with the Company.

68.    Lastly, as stated in the Recommendation Statement, under the terms of the Merger Agreement, "the Company may take certain compensation actions prior to the consummation of the Merger that may affect its executive officers. For any officer or employee of the Company or its subsidiaries whose total annual compensation does not exceed $125,000, the Company may grant compensation and benefit increases in the ordinary course of business consistent with past

practice. In addition, in the event that payments in respect of the 2011 STIP have not been paid prior to the closing date of the Merger, [General Dynamics] will, or will cause the Surviving Corporation to, pay bonus amounts under the 2011 STIP in a lump-sum cash payment at the 'target' level, regardless of actual performance, to each participant in such program at the normally scheduled time for such payments as long as the participant has not voluntarily terminated (as determined in good faith) his or her employment or consulting arrangement with the Company prior to such payment date. All of the executive officers and certain other employees of the Company participate in the 2011 STIP."

69.    Based on the above, the Proposed Transaction is unfair to Force Protection's public shareholders, represents an effort by the Individual Defendants to aggrandize their own financial position and interests and the interests of other Company insiders at the expense of and to the detriment of Class members, and General Dynamics has aided and abetted these breaches of fiduciary duty by, in effect, buying the support of Force Protection's management.

### *The False and Misleading Recommendation Statement*

70.    To make matters worse, defendants are withholding material information about the Proposed Transaction from Force Protection's public shareholders. The Recommendation Statement, which recommends that Force Protection's shareholders tender their shares in the tender offer, contains numerous material omissions and misstatements, in contravention of defendants' duty of candor and full disclosure under state law.

### Disclosures Related to Force Protection's Financial Forecasts

71.    The Recommendation Statement fails to disclose certain material information concerning the financial forecasts of the Company prepared by Force Protection's senior management. In particular, the Recommendation Statement fails to disclose:

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

(a)     the financial forecasts of the Company that were provided to General Dynamics (which included additional revenue opportunities and operating expenditure reduction opportunities that were not included in the financial forecasts provided to the Company's financial advisors), along with the assumptions and probabilities underlying such forecasts;

(b)     the amount of additional revenue, gross profit, and EBITDA for fiscal year 2012 that were included in the financial forecasts provided to General Dynamics;

(c)     the reasons General Dynamics and the Company's financial advisor were each provided with a different set of forecasts by Force Protection's senior management, and whether the Board was aware of the different sets of forecasts;

(d)     when the financial forecasts that were provided to General Dynamics and the Company's financial advisors were each prepared;

(e)     whether the financial information of the Company provided to and used by Lincoln and Barclays Capital included the $185.9 million contract win that the Company announced on November 1, 2011;

(f)     the financial forecasts of the Company for year 2016 that were prepared by Force Protection senior management and used by Lincoln and Barclays Capital in their *Discounted Cash Flow* analyses. The Recommendation Statement omits the cash flow projections for fiscal year 2016, even though they were used by the financial advisors in conducting their respective *Discounted Cash Flow* analyses, but provides that information for years up to 2015;

(g)     the unlevered free cash flow projections of the Company for years 2012 through 2016 that were prepared by senior management of the Company and/or derived by Lincoln in its *Discounted Cash Flow* analysis;

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

(h)     in regard to the assumptions for projected Capital Expenditures, why potential acquisitions were included as part of year by year Capital Expenditures (and assumed by both financial advisors), a figure not normally included as part of Capital Expenditures because, amongst other things, it includes non-wasting assets such as goodwill, and has the effect of lowering the year by year free cash flow projections, and thereby artificially lowers the implied per share valuation range of the Company;

(i)     the basis for the depreciation and amortization projection rates of $16 million dollars per year, which is half the size of the Capital Expenditure projections, and a highly unusual discrepancy that ultimately results in a lower per-share range; and

(j)     the nature of the restructuring expense projections, and why they are included for only two years.

**Disclosures Related to the Events Leading Up to the Announcement of the Proposed Transaction**

72.    The Recommendation Statement fails to disclose material information concerning the process conducted by the Board in selling the Company, including information pertaining to discussions and negotiations with General Dynamics and other potential acquirers. In particular, the Recommendation Statement is materially misleading and omits material information in, among other things, the following respects:

(a)     The Recommendation Statement fails to disclose the nature of the discussions between Bidder A and the Company between October 31, 2010, when Bidder submitted an offer to acquire the Company, and February 4, 2011, when Bidder A withdrew its offer,;

(b)     The Recommendation Statement fails to disclose the reasons provided by Bidder A on February 4, 2011 that it was not interested in acquiring the Company;

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

(c)    The Recommendation Statement fails to disclose the price per share value of General Dynamics' March 16, 2011 offer to acquire the Company for $425 million in cash;

(d)    The Recommendation Statement fails to disclose why Bidder B withdrew its offer;

(e)    The Recommendation Statement fails to disclose whether the Board interviewed other financial advisors before retaining Lincoln in April 2011;

(f)    The Recommendation Statement fails to disclose the criteria used to select the eight potential interested parties contacted by Lincoln in April and May 2011, and whether there were "potential interested parties" that were not contacted;

(g)    The Recommendation Statement fails to disclose the meaning of the term "eight potential persons" that were contacted, and whether the term "persons" is distinct from the other potential acquirers described in the Recommendation Statement;

(h)    The Recommendation Statement fails to disclose the selection criteria that were used to decide who to approach regarding a strategic transaction with the Company;

(i)    What is meant by "the Company's management also updated the committee on the discussions with potential interested parties, including Company B," and whether the term "parties" is distinct from "persons" in this context;

(j)    The Recommendation Statement fails to disclose the members of the "special transactions committee" formed by the Board on July 29, 2011, the reasons the Board determined to form such a committee at such a late time, the roles and responsibilities assigned to the committee, and what level of involvement the committee had, including whether it was authorized to retain independent counsel and financial advisors, and if so, whether it considered doing so, and the reasons it did not do so;

(k)    The Recommendation Statement fails to disclose the reasons the Company determined that the "other company" would "not be in a position to engage in productive discussions about a strategic transaction" as indicated on page 13 in the Recommendation Statement;

(l)    The Recommendation Statement fails to disclose the reasons the Company determined to engage a second financial advisor, Barclays Capital, on October 22, 2011;

(m)    The Recommendation Statement fails to disclose whether the Company engaged in any discussions or negotiations with Bidder B between September 23, 2011 (when Bidder B submitted a written indication of interest to acquire the Company at a price range of $5.50 to $6.00 per share) and October 25, 2011 (when Bidder B reduced its price to under $5.00 per share). This information is important in determining whether the Company was favoring General Dynamics, with whom it was engaging in extensive discussions during this time period, over other interested parties;

(n)    The Recommendation Statement fails to disclose whether Bidder B was the only party given access to the electronic data room, and if so, why;

(o)    The Recommendation Statement fails to disclose why "the other company would not be in a position to engage in productive discussions about a strategic transaction," during October, 2011, what the strategic transaction referred to was, and why the "other company would not sign the company's proposed confidentiality agreement";

(p)    The Recommendation Statement fails to disclose the nature of the "certain matters identified by Bidder B during the course of its due diligence on the Company";

(q)    The Recommendation Statement fails to disclose what is meant by the term "defensive posture" in regard to its sales process and the effect this had on the process;

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

(r)  The Recommendation Statement states that on October 26, 2011, General Dynamics informed the Company that it would be difficult to reach an agreement "over the following 11 days" but fails to disclose whether and why the parties needed to reach agreement in 11 days;

(s)  The Recommendation Statement fails to disclose the "potential benefits and draw-backs" of the Proposed Transaction that was discussed by the Board on November 3, 2011;

(t)  The Recommendation Statement fails to disclose the "significant open matters" that was discussed on November 4, 2011;

(u)  The Recommendation Statement fails to disclose the reasons the Company did not contact any additional parties outside of the eight parties contacted in April and May 2011;

(v)  The Recommendation Statement fails to disclose whether the Board considered contacting additional parties (or re-contacting the parties it had previously contacted) after Bidder B and General Dynamics respectively submitted indications of interest in September and October 2011;

(w)  The Recommendation Statement fails to disclose whether and to what extent the Board considered the $185.9 million contract win that was announced on November 1, 2011 in determining whether to enter into the Proposed Transaction at the $5.52 per share value;

(x)  The Recommendation Statement fails to disclose the criteria by which the Company chose its financial advisors, whether there was a selection process, what was considered, and how the advisors were chosen, and why an advisor was chosen so late in the process; and

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

(y)    The Recommendation Statement fails to disclose the amount of compensation received by Barclays Capital for services it has performed for General Dynamics in the past two years.

### Disclosures Related to Lincoln's and Barclays Capital's Financial Analyses and Opinions Regarding the Value of the Company

73.    The Recommendation Statement fails to disclose certain data and inputs underlying the financial analyses supporting the fairness opinions of the Board's financial advisors, Lincoln and Barclays Capital, including:

(a)    with respect to Lincoln's *Selected Publicly Traded Company Analysis*, the selection criteria for the companies selected, the Enterprise Value / LTM EBITDA and Enterprise Value / 2011E EBITDA multiples observed for each of the comparable companies;

(b)    with respect to Lincoln's *Discounted Cash Flow Analysis*, the selection criteria for the companies selected, the weighted average cost of capital observed for each of the comparable companies and how that figure was reached; the reasons Lincoln did not consider Force Protection's WACC in selecting a discount rate; the basis for the projected growth rate selection of Force Protection; the adjusted 2017 EBITDA referenced in the analysis; why future acquisitions were included in the Capital Expenditures projections when those assets are not wasting assets;

(c)    with respect to Lincoln's *Selected Transactions Analysis*, the reasons Lincoln only selected two transactions in its analysis, the nature of its selection criteria, and why its selection criteria were different than Barclays, which chose more companies as comparables; the control premium study that Lincoln reviewed; and why it used a 9 month forward looking and 3 months past and actual data in determining the 2011E multiple to calculate the implied share range;

(d)    with respect to Barclays Capital's *Selected Public Company Analysis*, the selection criteria for the comparable companies selected by Barclays; the 2011 and 2012 P/E multiples and the 2011 and 2012 Enterprise Value to Revenue, and EBITDA multiples; the EBIT, and other, multiples observed for each of the selected companies; and why Barclays applied a multiple of 4.0 to 4.5 of enterprise value to the adjusted 2011E EBITDA, and 3.5x-4.0x of enterprise value to the adjusted 2012E EBITDA, a dramatic difference in applied multiples for the respective years; and why the multiples applied in both years were now only lower than both the average and the median multiples of the selected comparable companies, but were in fact lower than any single one of the selected comparable companies;

(e)    with respect to Barclays Capital's *Selected Public Company Analysis*, the reasons Barclays Capital calculated an implied per share range for the Company using only the 2011E EBITDA and 2012E EBITDA multiples;

(f)    with respect to Barclays Capital's *Selected Precedent Transaction Analysis*, the selection criteria of the companies selected; the judgments made by Barclays Capital in selecting the 7.0x to 9.0x range of multiples; and the extent to which the transactions prior to 2009 were considered in selecting the multiple range;

(g)    with respect to Barclays Capital's *Discounted Cash Flow Analysis*, Force Protection's WACC, which was used in selecting a discount rate range in the analysis and how, and with what assumptions, that number was reached; whether the projections, including 2016E projections omitted in the financial projections section of the Registration Statement, were the projections provided to the Board; the basis for the growth rate selection; the adjusted 2017 EBITDA referenced in the analysis; and why future acquisitions were included in the Capital Expenditures projections when those assets are not wasting assets;  and

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

(h)     with respect to Barclays Capital's *Leveraged Buyout Analysis*, the criteria used to select the terminal value multiple of 3.5x to 4.5x.

74.     Accordingly, because the foregoing process and material misstatements and/or omissions represent a violation of state law, Plaintiffs seek injunctive and other equitable relief to prevent the irreparable injury that Company shareholders have and will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF
### COUNT I
### Breach of Fiduciary Duties
### (Against All Individual Defendants)

75.     Plaintiffs repeat all previous allegations as if set forth in full herein.

76.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of Force Protection and have acted to put their personal interests ahead of the interests of Force Protection shareholders.

77.     The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes heightened fiduciary responsibilities to maximize Force Protection's value for the benefit of the stockholders and requires enhanced scrutiny by the Court.

78.     The Individual Defendants have breached their fiduciary duties of loyalty, good faith, and independence owed to the shareholders of Force Protection because, among other reasons:

(a)     they failed to take steps to maximize the value of Force Protection to its public shareholders and took steps to avoid competitive bidding;

(b)     they failed to properly value Force Protection; and

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

COGBURN LAW OFFICES
9555 S. Eastern, Suite 280
Las Vegas, Nevada 89123
(702) 384-3616 FAX: (702) 943-1936

(c)    they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

79.    As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiffs and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Force Protection's assets and will be prevented from benefiting from a value-maximizing transaction.

80.    Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiffs and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

81.    Plaintiffs and the Class have no adequate remedy at law.

## COUNT II
### Breach of Fiduciary Duty -- Disclosure
### (Against Individual Defendants)

82.    Plaintiffs repeat all previous allegations as if set forth in full herein.

83.    The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiffs and the Class all information material to the decisions confronting Force Protection's shareholders.

84.    As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

85.    As a result, Plaintiffs and the Class members are being harmed irreparably.

86.    Plaintiffs and the Class have no adequate remedy at law.

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

### COUNT III
### Aiding and Abetting
### (Against Force Protection, General Dynamics, and Merger Sub)

87.    Plaintiffs repeat all previous allegations as if set forth in full herein.

88.    As alleged in more detail above, Defendants Force Protection, General Dynamics, and Merger Sub have aided and abetted the Individual Defendants' breaches of fiduciary duties.

89.    As a result, Plaintiffs and the Class members are being harmed.

90.    Plaintiffs and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiffs demand judgment against defendants jointly and severally, as follows:

(A)    declaring this action to be a class action and certifying Plaintiffs as the Class representatives and their counsel as Class counsel;

(B)    enjoining, preliminarily and permanently, the Proposed Transaction;

(C)    in the event that the Proposed Transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiffs and the Class rescissory damages;

(D)    directing that Defendants account to Plaintiffs and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E)    awarding Plaintiffs the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiffs' attorneys and experts; and

(F)    granting Plaintiffs and the other members of the Class such further relief as the Court deems just and proper.

November 25, 2011

COGBURN LAW OFFICES

By: _____
Jamie S. Cogburn
Nevada State Bar No. 008409
9555 S. Eastern Avenue, Suite 280
Las Vegas, NV 89123
(702) 384-3616

*Proposed Interim Co-Liaison Counsel for Plaintiffs*

-and-

COOKSEY, TOOLEN, GAGE, DUFFY & WOOG, A PROFESSIONAL CORPORATION

By: _____
Martin A. Muckleroy
Nevada State Bar No. 009634
3930 Howard Hughes Parkway, Suite 200
Las Vegas, NV 89169
(702) 949-3100

*Proposed Interim Co-Liaison Counsel for Plaintiffs*

OF COUNSEL:

Shannon Hopkins
Allen Schwartz
**LEVI & KORSINSKY, LLP**
30 Broad Street, 15th Floor
New York, NY 10004
(212) 363-7500

*Proposed Interim Co-Lead Counsel for Plaintiffs*

-and-

Juan E. Monteverde
Brian Moon
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331

*Proposed Interim Co-Lead Counsel for Plaintiffs*

-and-

David A.P. Brower
Brian C. Kerr
**BROWER PIVEN, A PROFESSIONAL CORPORATION**
488 Madison Avenue, 8th Floor
New York, NY 10022
(212) 501-9000

*Proposed Interim Co-Lead Counsel for Plaintiffs*

COGBURN LAW OFFICES
9555 S. Eastern., Suite 280
Las Vegas, Nevada89123
(702) 384-3616 FAX: (702) 943-1936

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27